Samuels, J.
Nathaniel Thompson, as guardian, was in possession of Winston’s bond, as part of the estate of George Pottie his ward. Whatever interest the ward had therein was subject to the guardian’s control ; he might have received the money due thereon if voluntarily paid; he might have sued for it in a common law court in the name of John Thompson, executor of George Pottie the obligee, but for his own use as guardian; and the nominal plaintiff would have had ho power to prevent the prosecution of the suit, or to prevent the collection of the money for the use of the guardian; or he might have sold and transferred the bond. But in any exercise of his authority the guardian must, at his peril, have acted with proper discretion, in reference to the ward’s interest. It is for the benefit of the ward himself that the guardian should, if possible, be regarded as having the legal title to the ward’s personal estate. That title may be essential to the protection of the property itself; the guardian is responsible for its safe keeping, and it *130 would be unjust to deny Mm the means which may be the only effective means of discharging his duty. In Garland v. Richeson, 4 Rand. 206, it was held that an assignee of a bond acquired no legal title to the debt ; and it follows a fortiori that a mere transferree acquires no legal title. Yet we have seen that the transferree may in a common law court recover the money; and that the supposed holder of the legal title cannot interfere to prevent such collection. It is obvious that John Thompson, the holder of the legal title, and the obligee in this bond, could not recover the money due if the holder sued for his own use, or the bond itself in detinue, or its value in trover. It is difficult to understand a legal title thus shorn of the rights usually conferred thereby. It is enough, however, for the purposes of this case, to decide that Rath aniel Thompson the guardian was invested with such title as was the subject of sale ; whether legal or equitable; or partly legal and partly equitable; or equitable in form, but legal in effect.
The interest of the ward requires that his guardian should have the power to sell his personal estate. Under certain circumstances, readily conceived, an immediate expenditure of money might be indispensable to protect the estate against loss ; the guardian might find that the best mode, or only mode, of raising the money, was by a sale of bonds belonging to the ward’s estate. Under such circumstances, a delay for collection might be injurious or even ruinous to the ward’s fortune. It is no valid objection to allowing the guardian this power, to say, it may be abused': Every power, however -necessary, may be abused. The objection would apply to every case in which one party is entrusted with the property of another. This power is justified by the reason and fitness of things, and is moreover well sustained by authority.
In Truss v. Old, 6 Rand. 556, Judge Green, speak *131 ing of guardians,, says, “their authority is coupled with a legal interest, and is not barely an office.” “It is an interest like that of a trustee for the separate use of a married woman, an executor in trust, or an administrator of an. estate of which there is no surplus after the payment of debts; all of whom have a legal without any beneficial interest.” Judge Green expresses the further opinion that the guardian has power to sell his ward’s personal estate.
In Bank of Virginia v. Craig, 6 Leigh 399, 426, Judge Carr says, “ The power and legal title of Fox (the guardian) to dispose of the stock (the ward’s property,) is proved by many cases.” And in this opinion Judges Brockenbrough and Cabell concurred. In the same case, p. 428, Judge Tucker says, “It is conceded also, that, as a general rule, a guardian has power to dispose of the personal estate of his ward; and though personally responsible for so doing, the vendee to whom he sells is not responsible if he has dealt fairly and justly, and without notice of any fraudulent intent.”
In Field v. Schieffelin, 7 John. Ch. R. 150, Chancellor Kent considers the question of a guardian’s power to sell his ward’s personal estate; and comes to a like conclusion with our own courts.
Holding then on the general question, that the guardian in this case had the power to sell, the question recurs, did he exercise his power within the limits and for the purposes prescribed by law ? The answer is plain, that he did not; he used his power for his own individual benefit, by appropriating the ward’s property to pay his (the guardian’s) own debt. This was a breach of trust, a fraud upon his ward. So far as the case of the appellees depends upon the conduct of Thompson the guardian, it is fully made out.
A recovery, however, cannot be had against Hunter, *132 without showing his liability: The mere fraud of the guardian is not sufficient of itself, under all circumstances, to invalidate his transactions with innocent parties. In this case Hunter took the bond on Winston of Thompson, who concealed the right in which he held it, and passed it off as his own property: It was taken at par, in part payment of a debt, which was amply secured. Hunter was not induced, by any hope of profit or fear of loss, to take the transfer. His only purpose was to receive a debt justly due, by a mode of payment convenient to both parties. In the argument of the case here it was properly conceded by the appellees’ counsel, that Hunter did not in fact know that Thompson’s title was imperfect; but he contended that as the bond on its face was payable to John Thompson,, executor of George Pottie, it showed that at one time other parties were interested, and might still be interested therein; that if Hunter had used proper caution he would have enquired further; and upon such enquiry would have ascertained the right in which Thompson held the bond: That lie must be held liable as he would be if he had procured the information which he might and ought to have obtained. In reply, it may be said that the money due Hunter’s wife, and which he was about to receive at the hands of her late guardian, was a legacy given by the will of George Pottie, of which John Thompson was the executor. That Nathaniel Thompson, the guardian, in right of his wife, a legatee in Pottie’s will, had received fifteen thousand dollars of the executor on account of that legacy: that these two legacies had been paid wholly or in part by the transfer of paper belonging to Pot-tie’s estate. Under these circumstances, when the guardian proposed to transfer as his own a bond payable to Pottie’s executor, Hunter might well suppose he had full right to do so : any man of ordinary prudence *133 would have been satisfied that all was right. Hunter must therefore be acquitted of any constructive fraud, as well as of actual fraud.
George Pottie the ward, and Hunter the purchaser for value without notice, are the victims of Thompson’s fraud; and in' settling the question of loss between them the court should proceed upon the general principles of equity. If the equities be equal, the court will not interfere; or if one party have the advantage at law, equity will not interfere to deprive him of that advantage, unless in favor of a party having superior equity. Trying the case by these tests, we must hold that Hunter’s equity is equal to that of George Pottie; a purchaser for value, without notice of fraud in his vendor, stands upon as high ground in equity, as any creditor, or cestui que trust.
Again. Thompson’s transfer to Hunter gave him the power at -law to receive the money if paid by Winston, and to give him a valid discharge ; or to sue for it in a common law court in the name of Thompson the executor, for his own use, and to recover it without the possibility of interference by the nominal plaintiff or any other party. Although Hunter may not have had the legal title to the debt, yet such were his rights and powers at law. In the exercise of his right he has received the money, and thereby acquitted Winston of all further liability therefor. To hold him responsible to George Pottie, we must deprive him of the advantage given by his legal power and right. To arrive at such a result, we must overturn all the decisions of the courts upon cases of the same or like kind.
In Broadus v. Rosson, 3 Leigh 12, the parties dealing with the guardian were fully aware of his breach of trust, and actively co-operated with him therein for their own benefit; and for that reason were held liable.
*134 In Dodson v. Simpson, 2 Rand. 294, the party dealing with an executor was apprised of his breach of trust, and aided him therein; and was therefore held accountable.
In Fisher v. Bassett, 9 Leigh 119, a party knowingly dealing with an administrator, who in breach of his trust was applying the assets of the estate to his own use, was held responsible.
In Pinckard v. Woods, 8 Gratt. 140, a party, for his own profit, knowingly dealing with an executor in such way as to enable the executor to commit a devastavit, was made liable.
In each of these cases, and in many if not all others of like kind, the party dealing with the fiduciary has been held responsible, because and only because of his co-operation in the fraud. In our case this ruling fact does not exist. I am therefore of opinion that George Pottie had no right to draw Hunter in question for his dealing with Thompson the guardian.
If George Pottie had no right to recover of Hunter, the appellees, claiming to be substituted to his rights, can have no right to recover. If, however, the case were otherwise between Pottie and Hunter, still, under the circumstances' of this case, the appellees should not be permitted to subject the appellant to any liability. The intestates of the appellees respectively bound themselves by bond as securities for Thompson as guardian; and in 1825, when this bond ■ was in full force, their principal committed the breach of its condition which is complained of in this suit. At that time the securities might have guarded themselves against all loss by using a small degree of diligence. They owed it to themselves and to the ward, to see that the guardian, who obtained possession of the ward’s estate by means of their credit, faithfully performed his trust; they should at least have taken care, when the ward attained full age, that the guar *135 riian fulfilled his duty. Instead of this, however, they allowed the guardian to retain the estate for fifteen years without question. At the end of that time, and eight years after the ward had become of full age, the guardian becoming insolvent, the securities are compelled to pay the amount of the ward’s estate in the guardian’s hands. From 1825, when the bond was transferred to Hunter, to 1840, Thompson was perfectly solvent, and could have paid his ward if required to do so; yet the securities, confiding in Thompson’s integrity and resources for indemnity, permitted him to retain the money without question. The loss resulting from the misplaced confidence of the securities should be borne by their estates; they trusted first, and they trusted last; they are asking relief against a party who is at least as innocent as themselves, and whose conscience is in nowise touched by their claim : he should not be held liable.
I am of opinion to reverse the decree and dismiss the bill, with costs of both courts to the appellant.
Daniel and Lee, Js. concurred in the opinion of Samuels, J.